UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DANIELLE M. THATCHER, o/b/o T.J.T,

                        Plaintiff,

            -against-                                      7:13-cv-0594 (LEK/DEP)

COMMISSIONER OF SOCIAL
SECURITY,

                        Defendant.
_____

## MEMORANDUM-DECISION and ORDER

## I.    INTRODUCTION

        This case has proceeded in accordance with General Order 18, which sets forth the

procedures to be followed in appealing a denial of Social Security benefits.  Both Parties have filed

briefs.  Dkt. Nos. 8 ("Plaintiff's Brief"); 9 ("Defendant's Brief").  For the following reasons, the

judgment of the Social Security Administration ("SSA") is affirmed.

## II.   BACKGROUND

        On March 31, 2010, Plaintiff Danielle Thatcher ("Plaintiff") filed an application for

Supplemental Security Income ("SSI") under the Social Security Act on behalf of her son, T.J.T.

("Claimant").  Dkt. No. 6 ("Record") at 21.[1]  Plaintiff claimed a disability of Attention Deficit

Hyperactivity Disorder ("ADHD").  R. at 155.  The claim was initially denied on October 15, 2010,

and on December 3, 2010, Plaintiff filed a timely request for a hearing.  R. at 21.  ALJ Robert E.

Gale ("Gale") held a video hearing on July 12, 2011, in which Plaintiff and Claimant appeared, id.,

and issued an unfavorable decision on August 19, 2011, R. at 34.  Plaintiff appealed the ALJ's

_____

        [1] Citations are to the Record are to the pagination assigned by the SSA.

decision on September 19, 2011, R. at 15, and on March 27, 2013, the Appeals Council denied

review, R. at 1. Plaintiff commenced the instant action on May 23, 2013. Dkt. No. 1

("Complaint").

### A. Plaintiff's Medical Records

Claimant was born on March 17, 2003. R. at 144. Claimant resides with his parents and

younger brother. Id. His father is disabled. Id. Claimant's early childhood development followed

normal timelines, and he was able to walk at fifteen months and say his first words at ten months.

Id.

Prior to elementary school, Claimant participated in home-based Head Start and attended

Jack & Jill Nursery School a couple of times a week. R. at 150. Head Start staff completed a skills

checklist for Claimant at age four. R. at 192. In the area of social and emotional development,

Claimant was noted as working on the following skills: redirecting aggressive behavior; expressing

feelings, needs, and opinions; cooperating, taking turns, and negotiating without being overly

submissive or directive; and maintaining concentration on a task or set of directions despite

distractions. R. at 192-93. In physical health and development, Claimant was noted to be working

towards acquiring increasing fine motor skills, such as the ability to use writing tools, and increasing

gross motor skills, such as the ability to jump, march, and coordinate movements to use balls,

tricycles, and other equipment. R. at 195. Claimant was also noted to be working towards

acquiring certain mathematical skills, such as counting in sequence and associating number

concepts in meaningful ways. R. at 196. Claimant was still learning to be able to initiate and

respond appropriately in conversations with adults and peers. R. at 197. Claimant was noted to be

still developing literacy skills, such as identifying letters of the alphabet, matching sounds, and

printing familiar words. R. at 199.

On January 3, 2008, Claimant underwent psychological and speech/language evaluations by the Harrisville Central School District's Committee on Preschool Special Educations ("CPSE") in order to determine if he qualified for preschool special education services. R. at 144. Claimant's cognitive functioning was evaluated with the Stanford Binet Intelligence Scales for Early Childhood. R. at 146. Claimant's Full Scale score was 77, which was 1.5 standard deviations below the mean, and categorized as "borderline." Id.

Plaintiff completed the Vineland II Adaptive Behavior Scales, which assessed the degree to which Claimant is able to independently meet his needs and interact with others. R. at 147. Claimant's composite score was 80, with a mean of 100 and a standard deviation of 15, which was "moderately low." Id. Claimant's communication skills were in the moderately low range, his daily living skills low, his socialization adequate, and his motor skills adequate. Id. Claimant's speech evaluation showed a mild delay in his receptive skill, and average expressive, total language, and speech skills. R. at 152-53.

Plaintiff also completed the Behavior Assessment System for Children, in order to better understand Claimant's behavior. R. at 149. Claimant's behaviors included: poor self-control, interrupting others, throwing tantrums, requiring a high level of supervision, becoming easily frustrated, having difficulty adjusting to new situations, requiring assistance with daily living skills, viewing things negatively, displaying emotions not matched to the situation. R. at 149-50. During the testing, Claimant was initially cooperative and attentive, but was observed to become over-stimulated and to have difficulty attending as it progressed. R. at 145. He responded positively to directions but had trouble complying with requests when he became over-stimulated. R. at 145-46.

His communication appeared age appropriate. R. at 145.

The evaluation concluded that Claimant had "significant attention and impulse control difficulties." R. at 150. It recommended that CPSE consider classifying Claimant as a preschool child with a disability. Id.

On June 24, 2010, Claimant's first-grade teacher Karen A. Bellinger ("Bellinger") completed a questionnaire regarding Claimant. R. at 166-73. Ms. Bellinger stated that Claimant had no problems in terms of acquiring and using information, moving about and manipulating objects, and caring for himself. R. at 167, 170, 171. In the domain of attending and completing tasks, Ms. Bellinger noted that Claimant had obvious problems in focusing long enough to finish assigned tasks, completing assignments, working without distracting self or others, and working at a reasonable pace or finishing on time. R. at 168. In the other areas of the domain, she recorded slight or no problems. Id. In the domain of interacting and relating with others, Claimant was noted to have obvious problems in making and keeping friends, following rules, and respecting and obeying adults. R. at 169. Ms. Bellinger recorded that when Claimant began first grade "[h]e found it difficult to focus during lessons and class assignments," but then was put on medication and became happier, polite, and more focused. R. at 172. Beginning in January 2010, Claimant took Concerta for his ADHD. R. at 191. However, after Christmas break, "he didn't seem happy and [was] easily distracted again," and his medication was increased." Id. Ms. Bellinger stated that he seemed "overly medicated," and that he had been disruptive. Id. She observed that he had "a lot of family issues" and recommended that he be seen by a pediatrician specializing in children with ADHD. R. at 169.

On October 13, 2010, when Claimant was in second grade, consultative examiner Jeanne A.

4

Shapiro, Ph.D. ("Dr. Shapiro"), conducted a psychiatric evaluation of Claimant. R. at 256. Dr. Shapiro found that Claimant's "manner of relating, social skills, overall presentation was age appropriate." R. at 257-58. His eye contact was appropriate and his hygiene and grooming were good, although he needed assistance in dressing, bathing, and grooming himself. R. at 258. Claimant's speech was notable for sound substitutions, but his grasp of language was largely age appropriate. Id. Claimant's thought processes were coherent and goal-directed and his memory skills "intact." Id. His attention and concentration were also "intact," but his mood and motor behavior were "hyperactive" and he had "difficulty remaining still and staying focused." Id. His insight and judgment were recorded as poor. Id. His intellectual functioning was estimated to be in the "low average range." Id. Plaintiff informed Dr. Shapiro that Claimant had difficulty sleeping, decreased appetite, and violent and aggressive behavior at home, although no significant behavior problems at school. R. at 256. Based on the examination, Dr. Shapiro concluded that Claimant may have difficulty attending to, following and understanding age appropriate directions; completing age appropriate academic tasks; and interacting appropriately with peers and adults. R. at 259. Dr. Shapiro's diagnosis was ADHD and oppositional defiant disorder. Id.

On October 15, 2010, Dr. Harding and Dr. Mohanty, State Agency medical consultants, completed a Childhood Disability Evaluation Form based on the record, and concluded that while Claimant had a severe impairment, Claimant's impairment does not meet, medically equal, or functionally equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). R. at 268-69. Dr. Harding and Dr. Mohanty found that Claimant has a marked impairment in attending and completing tasks, a less than marked limitation in interacting and relating with others, and no limitation in the other domains. R. at 270-71.

On November 22, 2010, Claimant's second grade teacher, Lila LaDuc ("LaDuc") wrote a letter describing Claimant's behavior in school. R. at 176. Ms. LaDuc observed that Claimant "has a difficult time staying on task and focusing on his work," and rarely finished his work on time and often needed directions repeated. Id. Ms. LaDuc stated that this had not yet affected Claimant's grades, but expressed concern that he would fall behind. Id. She also noted an occasion when Claimant was not on his medication, and "[h]is normally short attention span was even shorter." Id. She accordingly felt that Claimant needed to be on his medication to be successful in school. Id.

Ms. LaDuc also completed teacher questionnaires regarding Claimant on January 31, 2011 and May 24, 2011. R. at 210, 218. On the January questionnaire, Ms. LaDuc recorded problems in the domains of acquiring and using information and attending and completing tasks. R. at 204-05. Specifically, in the January evaluation, Ms. LaDuc indicated that Claimant had serious problems with comprehending and understanding math problems, focusing long enough to finish assigned tasks, working without distracting himself or others, and working at a reasonable pace, and obvious problems in expressing ideas in written form, refocusing when necessary, carrying out multi-step instructions, completing class assignments, and completing work accurately. Id. On the May evaluation, Ms. LaDuc indicated obvious problems in comprehending and doing math problems, expressing ideas in written form, focusing long enough to finish assigned tasks, and working without distracting himself or others. R. at 212-13. Ms. LaDuc additionally noted obvious problems in the domain of interacting and relating with others, in seeking attention appropriately and following rules. R. at 214.

Claimant's second-grade report card indicated that Claimant's social habitats were satisfactory, including that he was cooperative and demonstrated self-control. R. at 220. Claimant's

work habits were below satisfactory in several areas including working independently and being organized and neat.  Id.  Claimant's listening and speaking was below satisfactory in focusing attention during instruction and listening and following directions.  Id.

On January 28, 2011, Claimant underwent an evaluation by Dr. Jessica Jacobs ("Jacobs").  R. at 274.  Dr. Jacobs noted that Claimant's dad was often aggressive with Plaintiff, and that Plaintiff had taken Claimant and his brother and left in the past.  Id.  Claimant felt anxiety over leaving Plaintiff because he was afraid of her being injured.  Id.  Claimant also had trouble sleeping.  Id.  Claimant often became angry or frustrated and would be aggressive towards other people, and his brother in particular.  Id.  Because of Claimant's aggression, Dr. Jacobs changed Claimant's medication from Concerta to Focalin.  Id.  She also prescribed Atarax to help Claimant sleep.  R. at 275.

Claimant also has a history of allergies and asthma.  R. at 234, 252, 259.  At various times, Claimant has taken Singulair, albuterol, and Zyrtec for allergies.  R. at 191, 253.  In 2009, Claimant was diagnosed with bronchitis, and was prescribed Augmentin, Zithromax, celfacor, and Omnicef.  R. at 238-40, 245.

**B. ALJ Hearing**

Plaintiff and Claimant testified at a hearing before ALJ Gale on July 12, 2011.  R. at 37.  Plaintiff testified stated that Claimant would not dress himself, brush his teeth, bathe himself, get himself a snack, or wipe himself after a bowel movement independently.  R. at 44-45, 49, 61-62.  Claimant assisted with some household chores, such as taking out the garbage and helping with the dog, but would not pick up his room, even if reminded.  R. at 45.  Claimant often became distracted and would not finish tasks that he was working on.  R. at 56.  Plaintiff estimated that Claimant

would usually get five hours of sleep a night and stated that he preferred to sleep on the couch, rather than in his bed.  R. at 51, 64.

Plaintiff testified that Claimant's hobbies included bowling, biking, and swimming in the family pool.  R. at 47-48, 50, 63-64.  Claimant participated in a bowling league once a week.  R. at 50.  Plaintiff stated that she sometimes would have trouble getting Claimant to leave the pool and would have to drag him out.  R. at 63-64.  She also worried about Claimant riding his bike in the road and not looking for traffic.  Id.  Claimant participated in little league for one year, but would become distracted and did not understand the rules.  R. at 66.

Plaintiff testified that Claimant had three or four friends at school.  R. at 58.  However, Plaintiff stopped allowing Claimant's friends to come over when she saw them touching each other in a sexual manner.  Id.  Claimant lives in a rural neighborhood, and he would sometimes play with a child who lives across the street.  R. at 48.

Plaintiff testified that Claimant had completed second grade, on the normal education track, and would be entering third grade, although his teachers had been concerned that he would not advance.  R. at 43, 52.  She stated that his grades were "okay" and that he had not failed any classes. R. at 52.  Claimant received approximately three sheets of homework a night.  R. at 55.  Plaintiff stated that Claimant would become easily distracted while working on his homework, and that a sheet that should have only taken ten minutes might take one hour.  R. at 56.

Plaintiff testified that Claimant fought with his brother constantly and would also fight with his parents when they disciplined him.  R. at 48, 59.  When Claimant had tantrums, he would throw and break things and would use profanity.  R. at 59-60.  His fits could last all day.  R. at 60. Claimant's activity level was very high, and he would have trouble doing one thing at a time.  R. at

8

61. Plaintiff testified that he might be able to focus for five minutes on an activity before becoming distracted. R. at 57. Plaintiff believed that Claimant would hide his behavior at school. R. at 60.

Claimant then testified that his favorite subject at school was gym. R. at 70. Claimant liked playing tag and baseball, and climbing on the jungle gym. R. at 70, 74. Claimant had two friends at school. R. at 70. He stated that he got along with his parents, but would sometimes fight with them when they were mean. R. at 76. He stated that he did not get along well with his brother. R. at 71.

### C. Procedural History

ALJ Gale issued an unfavorable decision on August 19, 2011. R. at 18. While the ALJ found that Claimant had not engaged in substantial gainful activity and that Claimant had severe impairments of ADHD and oppositional defiant disorder, Claimant did not have impairment or combination of impairments that met or medically equaled the Listings. R. at 24. The ALJ also found that Claimant did not have an impairment or combination of impairments that functionally equaled the Listings. R. at 25. Specifically, the ALJ found that Claimant had: (1) a less than marked limitation in acquiring and using information; (2) a less than marked limitation in attending and completing tasks; (3) a less than marked limitation in interacting and relating with others; (4) no limitation in moving about and manipulating objects; (5) no limitation in caring for himself; and (6) a less than marked limitation in health and physical well-being. R. at 27-33. Accordingly, the ALJ concluded that Claimant was not disabled under the Social Security Act since March 31, 2010, the date the application was filed. R. at 33.

## III. LEGAL STANDARD

### A. Standard of Review

When a court reviews an SSA's final decision, it determines whether the ALJ applied the

correct legal standards and whether the decision is supported by substantial evidence in the record. 42 U.S.C. § 405(g); Roat v. Barnhart, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010) (Kahn, J.) (citing Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982)). Substantial evidence amounts to "more than a mere scintilla," and it must reasonably support the decision-maker's conclusion. Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). The Court defers to the Commissioner's decision if it is supported by substantial evidence, "even if it might justifiably have reached a different result upon a de novo review." Sixberry v. Colvin, No. 12-CV-1231, 2013 WL 5310209, at *3 (N.D.N.Y. Sept. 20, 2013) (quoting Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984)). However, the Court should not uphold the ALJ's decision when there is substantial evidence, but it is not clear that the ALJ applied the correct legal standards. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

### B. Standard for Benefits

To qualify for SSI benefits, an individual must demonstrate that he or she is "disabled" as defined under the Act. "An individual under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

The SSA has established a three-step process for determining whether an individual under the age of eighteen is eligible for SSI benefits on the basis of a disability. 20 C.F.R. § 416.924(a). First, the ALJ considers whether the child is engaged in "substantial gainful activity." Id. § 416.924(b). Second, the ALJ determines whether the child has a "medically determinable

10

impairment that is severe," which is defined as an impairment that causes "more than minimal functional limitations." Id. § 416.924(c). Finally, is the ALJ finds a severe impairment, he or she must than consider whether the impairment meets, medically equals, or functionally equals a disability in the Listings. Id. § 416.924(d). If an impairment is found to meet, or qualify as the medical or functional equivalent to a listed disability and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. Id. § 416.924(d)(1).

## IV.  DISCUSSION

Plaintiff argues that the Commissioner's final decision was not based on substantial evidence because the ALJ: (1) erred in determining that Claimant's impairments are not functionally equivalent to the Listings and (2) failed to properly assess Plaintiff's credibility. Pl.'s Br. at 12, 21.

### A.  Functional Equivalence to the Listings

To be functionally equal to the Listings, an impairment must be of "listing-level severity," which means it results in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). There are six domains, which "are broad areas of functioning intended to capture all of what a child can or cannot do." Id. § 416.926a(b)(1). The six domains are: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and (vi) health and physical well-being. Id. A child's limitations are evaluated by considering how appropriately, effectively, and independently the child performs activities compared to the performance of other children of the same age who do not have impairments. Id. § 416.926a(b).

A "marked" limitation in a domain is when an impairment "interferes seriously with [the]

ability to independently initiate, sustain, or complete activities." <u>Id.</u> § 416.926a(e)(2)(ii). It is the equivalent of functioning that would be found on "standardized testing with scores that are at least two, but less than three, standard deviations below the mean." <u>Id.</u> An "extreme" limitation "interferes very seriously with [the] ability to independently initiate, sustain, or complete activities," and is the equivalent of functioning that would be found at least three standard deviations below the mean on standardized testing. <u>Id.</u> § 416.926a(e)(3).

Plaintiff argues that Claimant has marked limitations in the domains of: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, and (4) caring for himself. Pl.'s Br. at 12.

### 1. Acquiring and Using Information

This domain considers how well a child acquires or learns information and how well they are able to use the information they have learned. 20 C.F.R. § 416.926a(g). As a school age child (age six to twelve),

> You should be able to learn to read, write, and do math, and discuss history and science. You will need to use these skills in academic situations to demonstrate what you have learned; e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. You will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change). You should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others.

<u>Id.</u> § 416.926a(g)(2)(iv).

Plaintiff argues that evaluations of Claimant have consistently shown limitations in acquiring and using information. Pl.'s Br. at 13. At age four, Claimant's cognitive functioning was

evaluated as "borderline," and CPSE recommended that Claimant be classified as a preschool child with a disability. R. at 146, 150. At age seven, Dr. Shapiro evaluated Claimant's intellectual functioning as in the low average range. R. at 258. Claimant's second grade teacher, Ms. LaDuc, completed a questionnaire in January 2011, indicating that Claimant had a serious problem in comprehending and doing math problems and an obvious problem in expressing ideas in written form. R. at 204. She stated that Claimant "tends to need instructions repeated and extra time to complete his work." Id. Plaintiff testified that Ms. LaDuc was concerned that Claimant would not advance to the third grade. R. at 53.

While Plaintiff points to evidence suggesting Claimant is limited in acquiring and using information, she ignores substantial contrary evidence that Claimant's abilities in acquiring and using information were not significantly behind those of his peers. Thus, the ALJ noted that Claimant was enrolled in a regular classroom, did not receive special education services, and would be advancing to the third grade. R. at 28. Ms. Bellinger did not indicate any problems in acquiring and using information and evaluated Claimant's instructional level as average. R. at 166-67. Ms. LaDuc observed problems in January 2011, particularly with math, but recorded improvement in those areas when she completed an evaluation in May 2011. R. at 204, 212. Claimant's report card show that he was not passing in some areas of evaluation, but was above average or high achievement in others. R. at 220. In most areas, Claimant was either satisfactory or below average. Id. Plaintiff stated that Claimant's grades are "okay" and that he did not fail anything. R. at 53.

The Court's task on review is limited to determining whether there is substantial evidence supporting the ALJ's conclusion. The Court finds that there is substantial evidence supporting the ALJ's conclusion that the Claimant has a less than marked limitation in acquiring and using

13

information. The ALJ assigned greatest weight to the opinions of Ms. Bellinger and Ms. LaDuc because they observe Claimant's behavior daily and are in the best position to compare him to other children his age. R. at 26. Their evaluations of Claimant suggest that while Claimant has some problems in acquiring and using information, Claimant does not significantly trail his peers in this domain so as to constitute a marked limitation. Plaintiff does not identify any error in the ALJ's analysis, but rather, merely disagrees with the ALJ's weighing of the evidence. However, the issue for the Court is not "whether there is substantial evidence supporting the [Plaintiff's] view," but "whether substantial evidence supports *the ALJ's decision*." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013).

### 2. Attending and Completing Tasks

This domain considers how well the child is able to focus and maintain their attention, and how well they begin, carry through, and finish their activities. 20 C.F.R. § 416.926a(h). As a school-age child,

> You should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless mistakes on your work . . . . You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores.

Id. § 416.926a(h)(2)(iv).

Plaintiff argues that the symptoms of Claimant's ADHD demonstrate that Claimant has a marked limitation in attending and completing tasks. Pl.'s Br. at 15. Plaintiff argues that the record indicates that Claimant easily loses focus, has a short attention span, is hyperactive, and needs repeated directions. Id. at 16. At the CPSE evaluation, Claimant was noted to become

"overstimulated" and to have "[h]igh activity levels and "difficulty controlling impulses and paying attention." R. at 146, 150. Ms. Bellinger similarly recorded obvious problems in focusing long enough to finish an assigned task and working without distracting self or others. R. at 168. Ms. LaDuc also stated that Claimant needed directions repeated and had a difficult time staying on task and focusing on his work. R. at 176. She noted serious problems in focusing long enough to finish assigned activities and working without distracting self or others in the January 2011 evaluation, and obvious problems in the May 2011 evaluation. R. at 205, 213. Dr. Shapiro also noted that Claimant's "mood was hyperactive" and he had "difficulty remaining still and staying focused." R. at 258.

Plaintiff further argues that her own testimony indicates Claimant's limitations in this domain. Pl.'s Br. at 16. She testified that Claimant was unable to focus on his homework and simple worksheets would take all night. R. at 56. Claimant would become frustrated and leave tasks, such as his chores, unfinished. Id. When Claimant played little league, he was unable to focus on the game. R. at 47.

The ALJ found that Claimant has a less than marked limitation in this domain on account of evidence that the limitations are controlled by Claimant's medications. R. at 29-30. Contrary to Plaintiff's argument, there is substantial evidence in the record in support of the ALJ's conclusion. Ms. Bellinger and Ms. LaDuc both recorded that Claimant's behavior was significantly affected by his medication. Ms. Bellinger stated that Claimant became happy, polite, and focused when first put on medication. R. at 172. Ms. LaDuc recorded an incident when Claimant was off his medication and "his behavior was very different." R. at 176. She opined that Claimant needed the medication to be successful in school. Id. The ALJ also noted that while Ms. Bellinger indicated several

obvious problems in her evaluation, in other areas of the domain she only recorded slight or no

problems.  R. at 168.  Thus, while she recorded obvious problems in focusing long enough to finish

assigned activities, completing class/homework assignments, and working without distracting self or

others, she noted no problem in paying attention when spoken to directly, sustaining attention

during play, changing from one activity to another, waiting to take turns, and carrying out single-

step instructions.  Id.  She noted slight problems in refocusing to task when necessary, carrying out

multi-step instructions, organizing own things, and completely work accurately without careless

mistakes.  Id.  While Ms. LaDuc noted Claimant to have several serious problems in this domain in

her January 2011 evaluation, in the May 2011 evaluation she only found two areas of obvious

problems, focusing long enough to finish assigned tasks and working without distracting self or

others.  R. at 213.  All of the other areas in the domain were either slight or no problems.  Id.  Ms.

LaDuc also stated on the May 2011 evaluation that "[t]here were only a few times that [Claimant]

was exceptionally active."  R. at 217.

   The ALJ placed greatest weight on the evaluations of Ms. Bellinger and Ms. LaDuc.  R. at

26.  Both evaluations support the ALJ's conclusion that Claimant functions with a less than marked

limitation in this domain.  They indicated that Claimant's limitations are controlled by his

medication, that he does not have problems with all areas of attending and completing tasks, and

that his limitations have been improving.  The ALJ was persuaded by the evaluations of Claimant's

teachers, rather than the opinion of Dr. Harding and Dr. Mohanty—to whom the ALJ assigned

considerable weight, R. at 27—that Claimant has a marked limitation in this domain.  R. at 29.

Plaintiff points to her own testimony of Claimant's deficiencies in this domain.  See Pl.'s Br. at 16.

However, as described further infra, the ALJ only found Plaintiff partially credible because "her

statements concerning the intensity, persistence, and limiting effects of [Claimant's] symptoms are not fully supported by the evidence of the record." R. at 25. Furthermore, the ALJ noted that Plaintiff reported that Claimant had been doing well on his medication. R. at 29. Plaintiff again merely points to contrary evidence to the ALJ's conclusion without identifying any error in his reasoning; however, the question for the Court is whether there is substantial evidence supporting the ALJ's conclusion, not whether substantial evidence would support a different conclusion. See Bonet, 523 F. App'x at 59. The ALJ therefore properly found that Claimant has a less than marked limitation in the domain of attending and completing tasks.

### 3. Interacting and Relating with Others

This domain considers how well the child initiates and sustains emotional connections with others, develops and uses language, cooperates with others, complies with rules, responds to criticism, and respects others' possessions. 20 C.F.R. § 416.926a(i). As a school-age child,

> You should be able to develop more lasting friendships with children who are your age. You should begin to understand how to work in groups to create projects and solve problems. You should have an increasing ability to understand another's point of view and to tolerate differences. You should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand.

Id. § 416.926a(i)(2)(iv).

Plaintiff argues that the ALJ overlooked evidence that Claimant has significant behavioral problems in this domain. Pl.'s Br. at 17-18. Claimant's Head Start evaluation at age four recorded that he was working on redirecting aggressive behavior; expressing feelings, needs, and opinions; cooperating, taking turns, and negotiating without being overly submissive or directive. R. at 192-93. Dr. Shapiro opined that due to "aggressive tendencies" and "low tolerance for frustration,"

Claimant would "have trouble interacting with both peers and adults." R. at 259. Ms. Bellinger indicated obvious problems in making and keeping friends, following rules, and respecting and obeying adults. R. at 169. Ms. LaDuc observed obvious problems in seeking attention appropriately and following rules. R. at 214. Plaintiff testified that Claimant constantly fights with his brother, his father, and her when disciplined. R. at 48-49. When angry, Claimant uses profanity and throws and breaks things. R. at 59-60. Claimant has three or four friends at school and plays with a neighbor across the street. R. at 58-59.

Plaintiff again ignores the substantial evidence in the record supporting the ALJ's conclusion that Claimant does not have a marked limitation in this domain. At school, both Ms. Bellinger and Ms. LaDuc indicated that Claimant has no problem in most areas of this domain. R. at 169, 214. Specifically, they both recorded that Claimant has no problem in: expressing anger appropriately, asking permission appropriately, relating experiences and telling stories, using language appropriate to the situation and listener, introducing and maintaining relevant and appropriate topics of conversation, taking turns in conversation, interpreting meaning of facial expression and body language and using adequate vocabulary. Id. Ms. LaDuc noted that Claimant's difficulty in following rules was due to his attention span and not his attitude. R. at 214. On his second grade report card, Claimant was satisfactory in all of his social habits, including being cooperative and courteous. R. at 220. Ms. Bellinger and Ms. LaDuc also found that almost all of Claimant's speech was intelligible on the first attempt. R. at 170, 215. This is corroborated by Dr. Shapiro's evaluation that Claimant's language was "largely age appropriate." R. at 258. Claimant was also observed at evaluations to be cooperative. R. at 145, 257. At the CPSE evaluation, Claimant "appeared to want to please." R. at 145. Dr. Shapiro observed that Claimant's "manner of relating,

social skills, and overall presentation was age appropriate." R. at 257-58. Therefore, the ALJ's conclusion that Claimant does not have a marked limitation in the domain of interacting and relating with others is supported by substantial evidence. Plaintiff has presented contrary evidence, but has not demonstrated that the ALJ's conclusion was not supported by substantial evidence.

### 4. Caring for Yourself

This domain considers "how well [the child] maintain[s] a healthy emotional and physical state, including how well [they] get [their] physical and emotional wants and needs met in appropriate ways; how [they] cope with stress and changes in [their] environment; and whether [they] take care of [their] own health, possessions, and living area." 20 C.F.R. § 416.926a(k). As a school age child,

> You should be independent in most day-to-day activities (e.g., dressing yourself, bath yourself), although you may still need to be reminded sometimes to do these routinely. You should begin to recognize that you are competent in doing some activities and that you have difficulty with others. You should be able to identify those circumstances when you feel good about yourself and when you feel bad. You should begin to develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior. You should begin to demonstrate consistent control over your behavior, and you should be able to avoid behaviors that are unsafe or otherwise not good for you. You should begin to imitate more the behavior of adults you know.

Id. § 416.926a(k)(2)(iv).

Plaintiff argues that the ALJ erred in finding that Claimant has no limitation in this domain because substantial evidence indicates that Claimant is unable to independently meet his emotional wants and needs and struggles to cope with stress and changes in his environment. Pl.'s Br. at 19. Claimant becomes frustrated easily and fights with his brother and parents. R. at 59. Plaintiff testified that she worried about Claimant riding his bike in the road and not looking. R. at 64. Claimant refuses to do many daily activities, such as dressing himself, brushing his teeth, and

wiping himself after a bowel movement, independently. R. at 44-45, 61-62. Claimant also struggles to sleep. R. at 51.

Substantial evidence supports the ALJ's determination that Claimant has no limitation in this domain. Despite Plaintiff's concerns, Claimant rides his bike independently around the neighborhood and was able to describe how to safely cross an intersection. R. at 48, 73. Plaintiff also testified that Claimant's medication was working. R. at 51. Ms. Bellinger and Ms. LaDuc observed no limitations in this domain. R. at 171, 216. The questionnaire completed by Ms. Bellinger and Ms. LaDuc included the following areas in this domain: handling frustration appropriately, being patient when necessary, taking care of personal hygiene, caring for physical needs, cooperating in or being responsible for taking medications, using good judgment regarding personal safety, identifying and appropriately assessing emotional needs, responding appropriately to changes in own mood, using appropriate coping skills to meet daily demands of school environment, and knowing when to ask for help. R. at 216. Dr. Harding and Dr. Mohanty similarly found no limitation in this domain. R. at 271. Claimant's other evaluations also suggested that he is able to independently function in this domain. See R. at 148, 258-59. Thus, there is substantial evidence for the ALJ's conclusion that Claimant has no limitation in this domain.[2]

### B. Plaintiff's Credibility

"If a child claimant is unable to adequately to describe his symptoms, the ALJ must accept the description provided by testimony of the person most familiar with the child's condition, such as

_____

[2] Plaintiff also argues that the ALJ should have found that the less than marked limitations he assigned in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others together are equivalent to a marked limitation in two domains. Pl.'s Br. at 20. Plaintiff, however, offers no support for this proposition, which is contrary to the regulations. See 20 C.F.R. § 416.926a(a).

a parent. In such a case, the ALJ must make specific findings concerning the credibility of the parent's testimony, just as he would if the child were testifying." Hickman ex rel. M.A.H. v. Astrue, 728 F. Supp. 2d 168, 181 (N.D.N.Y. 2010) (citation omitted). "A finding that a witness is not credible must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988). The ALJ must evaluate whether an individual's "statements about the intensity, persistence, or functionally limiting effects of his symptoms are consistent with the objective medical and other evidence." Hamedallah ex rel. E.B. v. Astrue, 876 F. Supp. 2d 133, 152 (N.D.N.Y. 2012) (citing Social Security Ruling ("SSR") 96-7p (July 2, 1996)). Because "symptoms sometimes suggest a greater severity of impairment than can be shown by objective evidence alone, [an ALJ] will carefully consider any other information," including the following factors:

(i) [The claimant's] daily activities;
(ii) The location, duration, frequency, and intensity of pain or other symptoms;
(iii) Precipitating and aggravating factors;
(iv) The type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms;
(v) Treatment, other than medication, received for relief of pain or other symptoms;
(iv) Any measures used to relieve pain or other symptoms; and
(vii) Other factors concerning functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3)(i)-(vii); 416.929(c)(3)(i)-(vii).

The ALJ found Plaintiff "only partially credible because her statements concerning the intensity, persistence, and limiting effects of [Claimant's] symptoms are not fully supported by the evidence of record." R. at 25. Plaintiff argues that the ALJ erred in assessing her credibility because he disregarded her testimony as to Claimant's behavior at home in light of reports from Claimant's teachers, although those were based observations made in a more structured setting.

21

Pl.'s Br. at 21.  Plaintiff argues that record evidence corroborates Plaintiff's testimony that Claimant exhibited aggressive behavior, had poor self-control, and low tolerance for frustration.  Id. at 21-22.

The ALJ assessed Plaintiff as only partially credible based on reports regarding Claimant's behavior at school and the "relatively minimal clinical findings."  R. at 26.  While Plaintiff testified to Claimant's inability to focus and hyperactivity, R. at 67, Claimant's teachers observed that Claimant's behavior improved on his medication, R. at 26.  Furthermore, Claimant was enrolled in a regular school program and his ADHD had "not significantly interfered with his academic progress."  R. at 26.  Plaintiff testified that Claimant was aggressive and became easily frustrated, R. at 59, but Claimant's second-grade report card indicated that he was satisfactory in all his social habits, which included being cooperative with peers and adults and courteous, R. at 26.  Ms. Bellinger and Ms. LaDuc also indicated that Claimant did not have anything more than an obvious problem in interacting and relating with others.  R. at 26.

The ALJ also found that the clinical findings did not support Plaintiff's allegations.  Id. Although Plaintiff alleged that Claimant experienced debilitating symptoms from ADHD since he was three years old, he was not prescribed any medication until January 2010.  Id.  Furthermore, records indicated that by July 2010, Claimant's ADHD was stable.  Id.  Dr. Shapiro noted that while Claimant's mood and motor behavior were hyperactive, his demeanor was cooperative and his manner of relating age appropriate.  Id.

Plaintiff argues that Claimant "acts out more at home than at other places."  Pl.'s Br. at 21. Even allowing that, the Court finds that substantial evidence supports the ALJ's assessment of Plaintiff's credibility.  In compliance with the regulations and SSR 96-7p, the ALJ identified significant inconsistencies between Plaintiff's allegations of Claimant's limitations and school

22

reports, teacher questionnaires, and clinical findings.  See <u>Hamedallah</u>, 876 F. Supp. 2d at 153.

Moreover, the ALJ assigned Plaintiff's testimony partial credibility to the extent that Plaintiff's

assessments were consistent with other record evidence.

## V.  CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the decision of the Commissioner is **AFFIRMED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and

Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:　　　September 30, 2015
　　　　　　　Albany, NY

Lawrence E. Kahn
U.S. District Judge